UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DANTE PARRISH, | |
| Plaintiff, | CIVIL ACTION NO. 3:24-cv-01805 |
| v. | (SAPORITO, J.) |
| ATTORNEY GENERAL OF PENNSYLVANIA, *et al.*, | |
| Defendants. | |

MEMORANDUM

Plaintiff Dante Parrish has filed an amended complaint (Doc. 12) pursuant to 42 U.S.C. § 1983, primarily alleging that the defendants violated his Fourteenth Amendment rights by placing him in disciplinary segregation at the York County Prison without due process. The Court will permit Parrish to proceed on Fourteenth Amendment claims against two defendants, Kruber and Alexis, and dismiss all other claims.

I. BACKGROUND

A prior version of Parrish's amended complaint (Doc. 10) did not clearly identify the intended defendants. The Court granted Parrish leave to file a second amended complaint and attach the prior filing as part of a renewed statement of facts, which he did. *See* (Doc. 11, 12-1).

Accordingly, the Court summarizes the factual allegations in both the operative complaint (Doc. 12) and the attachment (Doc. 12-1).

Parrish alleges as follows: Around 7:00 a.m. on October 5, 2022, as a pretrial detainee at the York County Prison, Parrish was involved in an "altercation" with C.O. Daryman and Sgt. Arnold. Parrish alleges that Arnold "attacked" him, which "forced" him to take Daryman and Arnold to the ground and restrain them. The incident ended when Parrish was shot with a stun gun by another officer. After receiving "minimum medical assistance" for his wounds from the stun gun, he was taken to a segregated housing unit.

Although he anticipated a disciplinary charge from the incident, Parrish never received written notice of any charge, which Arnold and Daryman "were supposed to draft." Nonetheless, on the same day[1], Parrish was taken to a disciplinary hearing before hearing examiner Lt. Kruber and his "assistant," Alexis. At the hearing, Parrish still had no written notice of the charge and was not permitted to offer witness

---

[1] In his first amended complaint, Parrish asserted that the hearing occurred "roughly ten hours later," but in the operative complaint, he alleges that it occurred at approximately 12:00 p.m., which would have been five hours after the alleged attack.

testimony. When Parrish complained about this, Kruber allegedly responded by saying "[w]e can do what we want." Alexis "remained silent" during this exchange. Parrish ultimately received a sanction of 120 days in segregated housing. While in segregation, he was confined to his cell for 23 hours per day, permitted 15 minutes of telephone use per month, and denied access to a TV, radio, and reading material, among other restrictions.

After receiving a written report of the hearing, Parrish appealed the decision to the Associate Warden on the grounds that he had not received written notice or an opportunity to present witnesses. The Associate Warden denied the appeal, and allegedly said: "I don't see how giving you a write up would change what I saw on the tape." Parrish appealed to the Warden and Solicitor General but received no response. Parrish now asserts claims based on a denial of due process, violation of equal protection, and "unlawful confinement." His named defendants include York County, the Attorney General of Pennsylvania, Adam Ogle (the Warden), Valerie Conway (the Associate Warden), and Daryman.

## II.  LEGAL STANDARDS

Under 28 U.S.C. § 1915A, the Court is obligated to screen a civil

complaint in which a prisoner seeks redress from a governmental entity or an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a); *James v. Pa. Dep't of Corr.*, 230 Fed. App'x 195, 197 (3d Cir. 2007). The Court must dismiss the complaint if it is "frivolous" or "fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915A(b)(1). The Court has a similar obligation with respect to actions brought *in forma pauperis* and actions concerning prison conditions. *See* 28 U.S.C. § 1915(e)(2)(B)(i); *id.* § 1915(e)(2)(B)(ii); 42 U.S.C. § 1997e(c)(1); *see generally Banks v. Cty. of Allegheny*, 568 F. Supp. 2d 579, 587–89 (W.D. Pa. 2008) (summarizing prisoner litigation screening procedures and standards).

    The legal standard for dismissing a complaint for failure to state a claim under § 1915A(b)(1), § 1915(e)(2)(B)(ii), or § 1997e(c) is the same as that for dismissing a complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. *Brodzki v. Tribune Co.*, 481 Fed. App'x 705, 706 (3d Cir. 2012) (per curiam); *Mitchell v. Dodrill*, 696 F. Supp. 2d 454, 471 (M.D. Pa. 2010); *Banks*, 568 F. Supp. 2d at 588. "Under Rule 12(b)(6), a motion to dismiss may be granted only if, accepting all well-pleaded allegations in the complaint as true and viewing them in the light most

favorable to the plaintiff, a court finds the plaintiff's claims lack facial plausibility." *Warren Gen. Hosp. v. Amgen Inc.*, 643 F.3d 77, 84 (3d Cir. 2011) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007)). In deciding the motion, the Court may consider the facts alleged on the face of the complaint, as well as "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). Although the Court must accept the fact allegations in the complaint as true, it is not compelled to accept "unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation." *Morrow v. Balaski*, 719 F.3d 160, 165 (3d Cir. 2013) (quoting *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007)).

Parrish brings this action for damages under 42 U.S.C. § 1983. Section 1983 provides in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. To establish a Section 1983 claim, a plaintiff must establish that the defendants, acting under color of state law, deprived the plaintiff of a right secured by the United States Constitution. *Mark v. Borough of Hatboro*, 51 F.3d 1137, 1141 (3d Cir. 1995). To avoid dismissal for failure to state a claim, a civil rights complaint must state the conduct, time, place, and persons responsible for the alleged violations. *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005). Further, "[c]ivil rights claims cannot be premised on a theory of *respondeat superior*. Rather, each named defendant must be shown . . . to have been personally involved in the events or occurrences which underlie a claim." *Millbrook v. United States*, 8 F. Supp. 3d 601, 613 (M.D. Pa. 2014) (citation omitted). As explained by the Third Circuit Court of Appeals:

> A defendant in a civil rights action must have personal involvement in the alleged wrongs . . . . [P]ersonal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence. Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity.

*Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988).

### III.  DISCUSSION

#### A. Due Process

Parrish's amended complaint clarifies that he was a pretrial

detainee at the time of this incident. The Due Process Clause of the Fourteenth Amendment protects pretrial detainees from conditions of confinement amounting to "punishment." *Bell v. Wolfish*, 441 U.S. 520, 535 (1979). "Generally, prisons may sanction a pretrial detainee for misconduct that he commits while awaiting trial, as long as it is not a punishment for the 'underlying crime of which he stands accused.'" *Kanu v. Lindsey*, 739 F. App'x 111, 116 (3d Cir. 2018) (quoting *Rapier v. Harris*, 172 F.3d 999, 1003-06 (7th Cir. 1999)). However, "the imposition of disciplinary segregation for violation of prison rules and regulations cannot be imposed without providing the due process protections set forth in *Wolff v. McDonnell*, 418 U.S. 539 (1974)." *Kanu*, 739 F. App'x at 116. These protections "include the right to receive written notice of the charges at least 24 hours before the hearing, the opportunity to present witnesses and documentary evidence, and a written statement of the reasons for the disciplinary action taken and the supporting evidence." *Id.* (citing *Wolff*, 418 U.S. at 563-66).

Here, Parrish's complaint supports a plausible inference that

Kruber and Alexis[2] knowingly imposed disciplinary segregation on Parrish without appropriate due process protections. However, it is still unclear if Parrish intended to name Kruber and Alexis as defendants. Although he appears to assert Fourteenth Amendment claims against them in his statement of facts (*see* Doc. 12-1 at 2 (alleging that Kruber and Alexis "sentenced [Parrish] without proper process")), he does not include them in his list of intended defendants, even though he did so in a prior version of the complaint. *See* (Doc. 1 at 4). Given that *pro se* pleadings are to be read liberally, the Court construes Parrish as asserting Fourteenth Amendment claims against Kruber and Alexis and will direct that they be restored to the docket as defendants in this case. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("[A] pro se complaint, however inartfully pleaded, must be held to less stringent standards than

---

[2] Parrish alleges that Alexis was Kruber's "assistant," but that both officers "sentenced" him. Parrish does not attribute any statement or action specifically to Alexis, so it is unclear what Alexis's precise role was. Nonetheless, the complaint supports a plausible inference that Alexis was present to assist with Parrish's disciplinary proceeding, heard Parrish's complaints at the hearing regarding the alleged lack of due process, and had the "actual knowledge and acquiescence" required for liability under Section 1983. *Rode*, 845 F.2d at 1207; *see, e.g., Teets v. Wetzel*, 630 F. Supp. 3d 679, 684-685 (W.D. Pa. 2022) (finding a reasonable inference of actual knowledge or acquiescence where the allegations about the defendants' job duties implied their participation).

formal pleadings drafted by lawyers.") (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)); *Spriggle v. LeVebre*, No. 3:18-CV-1136, 2019 WL 1140231, at *4 (M.D. Pa. Mar. 12, 2019) ("[because the plaintiff] is proceeding pro se, the Court will liberally construe his inclusion of [individuals'] names in his 'Claims for Relief' as an attempt" to name them as defendants); *see also* Fed. R. Civ. P. 8(e) ("Pleadings must be construed so as to do justice.").

However, none of Parrish's other defendants are appropriate for this claim as pled. Parrish names the Attorney General, alleging that the Attorney General "failed to oversee the enforcement of [prison] regulations" and "allowed the jail to create" a system in which officers "can do what [they] want and [inmates] just have to write it up." Beyond these conclusory statements, there are no facts suggesting that the Attorney General had any personal involvement in enforcing rules at the York County Prison. The allegation that the Attorney General "failed to oversee" enforcement of regulations falls short of the "personal direction or [] actual knowledge and acquiescence" required for Section 1983 liability. *See Rode*, 845 F.2d at 1207. Parrish attempts to sue York County, but a municipality is liable under Section 1983 only when its "policy or

custom" inflicted the injury. *See Watson v. Abington Twp.*, 478 F.3d 144, 155 (3d Cir. 2007) (citing *Monell v. New York City Department of Social Services*, 436 U.S. 658 (1978)). Parrish does not identify any policy or custom of York County; the complaint offers nothing from which to infer York County's responsibility other than the alleged failings of its employees in Parrish's case. "[A] municipality cannot be subjected to liability solely because injuries were inflicted by its agents or employees." *Jiminez v. All American Rathskeller, Inc.*, 503 F.3d 247, 249 (3d Cir. 2007).

Parrish's claims against other officers fare no better. He alleges that Daryman, an officer involved in the initial altercation, was "responsible for" drafting an incident report, and that his failure to do so "[led] to" the alleged denial of due process. However, he does not allege that Daryman himself decided to subject him to discipline or participated in the disciplinary process. The complaint does not support an inference that Daryman knew Parrish would be punished without due process merely because Daryman did not draft an incident report within ten hours of the

incident.³ Parrish also names the Warden and Associate Warden, presumably based on their responses to his grievance appeals, but post-hoc review of a grievance is not sufficient to show personal involvement in the underlying deprivation, even if Parrish believes his appeals were wrongly rejected. *See Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020).

### B. Remaining Claims

Parrish fails to state any other plausible claim for relief. He asserts a "violation of equal protection," but has not alleged that other prisoners were treated more favorably, or that those prisoners were "similarly situated" to him, as would be required to state a Fourteenth Amendment equal protection claim. *See Renchenski v. Williams*, 622 F.3d 315, 337 (3d Cir. 2010). He also asserts an unspecified claim of "unlawful confinement." Disciplinary segregation of pretrial detainees is permissible if imposed for a legitimate penological purpose⁴; moreover, if

---

³ Sgt. Arnold, the other officer involved in the initial altercation, is not among the defendants listed in the second amended complaint, but any claim against him would fail for the same reasons.

⁴ *See Hope v. Warden York Cnty. Prison*, 972 F.3d 310, 326 (3d Cir. 2020) (citations omitted). The complaint indicates that Parrish's segregation was reasonably related to a legitimate purpose, even though Parrish believes the officers were wrong to impose it. *See, e.g., Andrews*
(continued on next page)

Parrish intended to claim that the specific conditions imposed on him during his segregation were unconstitutional, his complaint does not identify any defendant with personal involvement in those conditions.

## IV.  CONCLUSION

For the reasons described above, Parrish will be granted leave to proceed on Fourteenth Amendment claims against Kruber and Alexis, and all other claims will be dismissed. An appropriate order follows.

Dated: February 24, 2025          *s/Joseph F. Saporito, Jr.*
                                   JOSEPH F. SAPORITO, JR.
                                   United States District Judge

---

*v. Talutto*, No. 4:24-CV-00783, 2024 WL 3330595, at *2-3 (M.D. Pa. July 8, 2024).