**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| DONTE PARRISH,<br><br>Plaintiff,<br><br>v.<br><br>FRANK KLUYBER, *et al.*,<br><br>Defendants. | CIVIL ACTION NO. 3:24-cv-01805<br><br>(SAPORITO, J.) |

**MEMORANDUM**

Donte Parrish brings Fourteenth Amendment claims against two officers from the York County Prison ("YCP"), alleging that they placed him in disciplinary segregation without affording him due process. The defendants have moved for summary judgment (Doc. 45). Because any claimed procedural error was harmless given the undisputed evidence of Parrish's guilt, the Court grants summary judgment to the defendants.

## I. BACKGROUND

In the operative complaint (Doc. 12), Parrish alleges that on October 5, 2022, as a pretrial detainee at the YCP, he was involved in an "altercation" with C.O. Daryman and Sgt. Arnold, during which Arnold allegedly "attacked" him. Parrish alleges that on the same day, a disciplinary hearing was held before hearing examiner Frank Kluyber

and his "assistant," Alexis Bartol. Parrish claims that he never received written notice of the charges and was not permitted to present witness testimony.[1] He was ultimately found guilty of several disciplinary charges and received a sanction of 120 days in segregated housing. After his release from the YCP, he filed this complaint seeking compensatory and punitive damages.

The Court permitted Parrish to proceed on Fourteenth Amendment claims against Kluyber and Bartol based on Parrish's alleged placement in disciplinary segregation without appropriate due process protections.[2] Prior to discovery, all parties moved for summary judgment, but these motions were denied without prejudice. *See* (Doc. 33). After the close of discovery, defendants filed a renewed motion for summary judgment (Doc. 45), which is now ripe for review.

## II. Legal Standards

Under Rule 56 of the Federal Rules of Civil Procedure, summary

[1] The complaint identified the defendants as "Lt. Kruber" and "Alexis."

[2] Upon screening of the complaint pursuant to 28 U.S.C. § 1915A, several other defendants were dismissed. *See* (Docs. 14, 15).

judgment should be granted only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" only if it might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of material fact is "genuine" only if the evidence "is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248. In deciding a summary judgment motion, all inferences "should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." *Pastore v. Bell Tel. Co. of Pa.*, 24 F.3d 508, 512 (3d Cir. 1994). The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion," and demonstrating the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant makes such a showing, the non-movant must set forth specific facts, supported by the record, demonstrating that "the evidence presents a sufficient disagreement to require submission to the jury." *Anderson*, 477 U.S. at 251-52.

In evaluating a motion for summary judgment, the Court must first

determine if the moving party has made a *prima facie* showing that it is entitled to summary judgment. *See* Fed. R. Civ. P. 56(a); *Celotex*, 477 U.S. at 331. Only once that prima facie showing has been made does the burden shift to the nonmoving party to demonstrate the existence of a genuine dispute of material fact. *See* Fed. R. Civ. P. 56(a); *Celotex*, 477 U.S. at 331. Both parties may cite to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for the purposes of the motion only), admissions, interrogatory answers or other materials." Fed. R. Civ. P. 56(c)(1)(A).

## III. MATERIAL FACTS

Parrish's response to the motion does not contain a counterstatement of material facts that addresses defendants' factual contentions, as required by the Local Rules of this district. *See* M.D. Pa. L.R. 56.1. His response consists of a brief, his own declaration, and attached exhibits. *See* (Doc. 49). Noting that *pro se* filings must be "liberally construed," *see Erickson v. Pardus*, 551 U.S. 89, 94 (2007), and to resolve this matter on the merits, we have considered all evidence and argument the parties have submitted. *See* Fed. R. Civ. P. 56(c)(1). Where

Parrish has not presented competent evidence to demonstrate a genuine dispute of material fact, defendants' properly supported fact statements are deemed admitted. *See* Fed. R. Civ. P. 56(e)(2); M.D. Pa. L.R. 56.1.

**A. October 5, 2022, Incident**

The summary judgment record indicates as follows: On October 5, 2022, at 9:24 p.m., officers Colton Arnold and Allen Daryman were searching Parrish's cell for "hooch,"[3] with Parrish present. The officers discovered hooch "in Parrish's possession," and ordered him to relinquish it, but he refused and tried to pour it into the toilet. They ordered Parrish to vacate his cell for transfer to a "disciplinary prehearing confinement cell." While Parrish was packing, Daryman observed him drinking from another bag of "hooch" that was stored under his bunk. Daryman ordered Parrish to wait in the hallway. *See* (Doc. 46 at 58-69).

In the hallway, Parrish and Arnold engaged in a verbal argument that turned into a physical altercation. Defendants have submitted video of the incident.[4] (Doc. 48). The video shows Parrish sitting on a bench and

[3] Hooch refers to a fermented alcoholic beverage that is prohibited at the YCP. *See* (Doc. 46 at 67).

[4] We have also reviewed a second video, which shows officers escorting Parrish away for medical attention after the incident.

arguing with an officer whom defendants identify as Arnold. Arnold walks toward the bench to place handcuffs on Parrish, but Parrish refuses and places his arms by his sides. Parrish then stands up abruptly. Arnold places his hand on Parrish's chest, and Parrish attempts to slap Arnold's hand away. Arnold then pushes Parrish against the wall as Daryman arrives to assist. The officers combine to tackle Parrish and bring him to the ground. The video does not clearly capture every aspect of the scuffle, but it is apparent that officers are trying to restrain Parrish while Parrish resists by kicking his legs and attempting to grab at the officers. (*Id.*, 2:00-2:41). It is undisputed that Parrish refused Arnold's orders to submit to handcuffs and violently resisted the officers as they tried to restrain him. *See* (Doc. 46 at 13-15, 58-67). The video then shows other officers arriving to assist, one of whom shoots Parrish with a taser, after which Parrish is immediately restrained. (Doc. 49, 2:42-3:08).

**B. Disciplinary Hearing**

After this incident, Parrish was placed in "prehearing confinement." Arnold prepared a disciplinary report charging Parrish with "Assaulting a staff member" (Code 108), "Adulteration of food or drink" (Code 210), "Any act that could endanger another person or

property" (Code 223), "Refusing orders given by staff" (Code 307), and "Insolence or being disrespectful to staff" (Code 308). Another officer prepared an "investigation report," which included the disciplinary report as an attachment. *See* (Doc. 46 at 27-28, 86-87).

The following day, October 6, a hearing was held at 2:30 p.m., approximately 19 hours after the underlying incident. Officer Brandon Koch attests that he delivered the investigation report to Parrish at 4:30 a.m., that Parrish refused to sign, and that Koch noted so on the form and "push[ed] a copy . . . under the cell door." (*Id.* at 50-52, 55). Parrish does not specifically address these facts, but through his declaration, he denies "ever receiving an incident report." He attests that he "stressed this issue" to Kluyber, the hearing examiner, who "responded 'we can do what we want.'" (Doc. 49 at 3).

At the hearing, defendant Bartol read the charges orally to Parrish and elicited a plea as to each charge. Parrish pleaded not guilty on all charges. (*Id.* at 36-39, 44). He did not request witness testimony but testified on his own behalf, "claim[ing] that he was attacked" by the officers. (*Id.* at 23-24). Ultimately, he was found guilty of all charges. A report signed by members of the disciplinary hearing board contained the

following explanation:

> [Inmate] found guilty of all stated [charges]. [Inmate] was observed [at] the bench arguing with staff. He stood up, [illegible] . . . and appeared to hit C/O Arnold. Other staff showed up and he was taken to the floor. He continued to swing [at] staff until they were successful in neutraliz[ing] him . . .

(Doc. 46 at 31). Parrish signed a form that documented the penalties and included the following stipulation: "I hereby acknowledge that I have been advised of my rights that were afforded at my hearing before the Disciplinary Hearing Committee and have chose [sic] to [ ] TESTIFY." (*Id.* at 32, 45, 47).

Parrish appealed the sanction, arguing that "no one ever gave me a copy of the charges against me or allowed me to call witnesses on my behalf." He did not argue the charges on the merits. Deputy Warden Michael D. Cuti denied the appeal, on the basis that Parrish had provided "no evidence" contradicting the disciplinary report:

> [T]he only reasoning you provide is the process (not receiving your paperwork) was not followed. I will make sure that you receive the paperwork if you have not already, but I have reviewed the video evidence of this incident and I clearly see you resisting being handcuffed and assaulting the officer in the process. I do not see how you reviewing the paperwork in a timely fashion would have any affect [sic] on what I was able to view on video . . .

(*Id.* at 34-35).

## IV. Discussion

The Due Process Clause of the Fourteenth Amendment protects pretrial detainees from conditions of confinement amounting to "punishment." *Bell v. Wolfish*, 441 U.S. 520, 535 (1979). "Generally, prisons may sanction a pretrial detainee for misconduct that he commits while awaiting trial, as long as it is not a punishment for the 'underlying crime of which he stands accused.'" *Kanu v. Lindsey*, 739 F. App'x 111, 116 (3d Cir. 2018) (quoting *Rapier v. Harris*, 172 F.3d 999, 1003-06 (7th Cir. 1999)). However, "the imposition of disciplinary segregation for violation of prison rules and regulations cannot be imposed without providing the due process protections set forth in *Wolff v. McDonnell*, 418 U.S. 539 (1974)." *Kanu*, 739 F. App'x at 116. These protections "include the right to receive written notice of the charges at least 24 hours before the hearing, the opportunity to present witnesses and documentary evidence, and a written statement of the reasons for the disciplinary action taken and the supporting evidence." *Id.* (citing *Wolff*, 418 U.S. at 563-66).

A federal court's review of prison disciplinary proceedings includes

review for harmless error.[5] For a Fourteenth Amendment claim based on procedural errors in disciplinary proceedings, the prisoner must introduce evidence that the result of the proceeding would have been different but for the alleged violations. *See Patel v. Zenk*, 447 F. App'x 337, 340 (3d Cir. 2011); *Elkin v. Fauver*, 969 F.2d 48, 52-53 (3d Cir. 1992).

If we read the record in Parrish's favor, the disciplinary hearing did not comply with the requirements prescribed in *Wolff.* Parrish clearly did not receive "written notice of the charges at least 24 hours before the hearing," because the hearing was held less than 24 hours after the

[5] While the Third Circuit has not specifically confirmed that harmless error review applies to pretrial detainees, numerous courts addressing this issue have found that it does, and our review has revealed no authority to the contrary. *See*, *e.g.*, *Cooper v. Haw*, 803 F. App'x 942, 944 (7th Cir. 2020) (nonprecedential); *Carrasquillo v. Kennedy*, No. 9:25-CV-1566 (BKS/DJS), 2026 WL 868956, at *3 (N.D.N.Y. Mar. 30, 2026); *Rafiq v. Bowers*, No. 25-CV-11090-AK, 2026 WL 540135, at *5 (D. Mass. Feb. 26, 2026); *Sines v. Collins*, No. 3:24-CV-178-HAB-SLC, 2025 WL 1141046, at *3 (N.D. Ind. Apr. 16, 2025); *Thompson v. Michaud*, No. 3:19-CV-1004 (JAM), 2019 WL 6879046, at *3 (D. Conn. Dec. 17, 2019); *Fabricius v. Maricopa Cnty.,* No. 06-CV-1105-PHX-MHM-CRP, 2009 WL 10695543, at *9 (D. Ariz. July 21, 2009); *Groves v. Milwaukee Cnty. Jail*, No. 06-C-1301, 2008 WL 515006, at *11 (E.D. Wis. Feb. 25, 2008); *see also Gross v. Warden, USP Canaan*, 720 F. App'x 94, 96 (3d Cir. 2017) ("[D]ue process is not violated absent a showing of prejudice.").

disputed incident.[6] However, there is no evidence that Parrish was denied the right to present witness testimony.[7]

With respect to the charges stemming from Parrish's fight with officers (Codes 108, 223, 307, and 308), the record shows that the procedural error was harmless. The hearing board's findings were supported by video of the incident as well as the disciplinary report and investigative report. This evidence established that Parrish was

---

[6] Moreover, Parrish has established a genuine dispute as to whether he received written notice at any point prior to the hearing. While we acknowledge the evidence that the disciplinary report was served on Parrish, we cannot say "with confidence that a rational trier of fact could not credit" Parrish's contrary declaration. *See Gonzalez v. Sec'y of Dep't of Homeland Sec.*, 678 F.3d 254, 264 (3d Cir. 2012).

Defendant Kluyber attests that Parrish affirmatively waived the right to 24 hours' notice, and that the hearing would have been continued if Parrish had asked, but Kluyber's description of the alleged waiver is vague. *See* (Doc. 46 at 23, ¶¶ 15-16) ("In this case, Inmate Parrish had his rights explained and he chose to proceed with the hearing."). The prison handbook does not indicate that prisoners can request to continue disciplinary hearings, which could support an inference that this option was not offered to Parrish. *See* (*id.* at 86) ("If the case is referred [for a hearing], the hearing will take place as soon as practical . . .").

[7] Although Parrish alleged in his complaint, a prior motion (Doc. 28 at 3), and his appeal to the Deputy Warden that he was not "allowed" or "given an opportunity" to present witnesses, those unverified allegations are not competent evidence at the summary judgment stage. *See Travillion v. Wetzel*, No. 24-1763, 2025 WL 971669, at *2-3 (3d Cir. Apr. 1, 2025).

disrespectful to staff, refused legitimate orders, and assaulted officers when they tried to restrain him. Although Parrish disputed the charge at the time, he has not disputed defendants' statement of material facts to that effect.[8] No prejudice resulted from the procedural error.

There were further procedural issues as to the final charge, "Adulteration of food or drink" (Code 210), but the record compels the same result. The disciplinary board's findings do not address this charge or explain the basis for the finding of guilt. *See* (Doc. 46 at 45, 47). Therefore, in addition to the absence of timely written notice, it is questionable whether Parrish received a "written statement of the reasons for the disciplinary action taken and the supporting evidence" as to this charge.[9] *Kanu*, 739 F. App'x at 116.

---

[8] Even if he had presented evidence supporting his story that he was attacked by Arnold and offered "no resistance," *see*, *e.g.*, (Doc. 28 at 3), that version of events is contradicted by the video. *See Scott v. Harris*, 550 U.S. 372, 380 (2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.").

[9] The "Sanction Report," which Parrish did receive, stated that the sanction was "a result of a disciplinary report dated 10/5/22" (Doc. 46 at 47), but whether Parrish received that report is disputed. Because Parrish has not shown prejudice, we need not resolve whether this reference was sufficient to comply with the requirements of due process.

However, it was undisputed that officers observed Parrish drinking hooch and storing it in his cell. Arnold's statement to that effect was included in the disciplinary report, which was part of the record of the disciplinary proceeding. Thus, there was at least "some evidence" in the record supporting the decision, which is sufficient to impose a prison disciplinary sanction. *See Superintendent v. Hill*, 472 U.S. 445, 455-56 (1985). Parrish does not identify any evidence that he would have presented on this issue or explain why the undisputed evidence did not support the finding of guilt. Therefore, he has not shown prejudice from the procedural errors, and defendants are entitled to summary judgment.

## V. CONCLUSION

Accordingly, summary judgment will be granted to the defendants, and we need not address their arguments regarding qualified immunity. An appropriate order follows.

Dated: August 11, 2026

***s/Joseph F. Saporito, Jr.***
JOSEPH F. SAPORITO, JR.
United States District Judge